CHAUNCEY HURLBUT *v.* CALVIN BRITAIN AND TALMAN WHEELER.

When a replication to a plea is filed, the truth of the plea is the only question to be tried, and if established it is a bar to so much of the bill as it professes to cover.

BILL to foreclose a mortgage, dated June 20, 1839, and executed by Britain to the Detroit City Bank. In December, 1839, the bank was placed in the hands of a receiver, who, on May 28th, 1842, sold and assigned the mortgage and accompanying bond to complainant. Britain interposed a plea, stating that the bond and mortgage in question, with five others of the same date, was given by him to the Detroit City Bank, upon and for the sole consideration and condition that the bank should deposit with the receiver of the Bank of Brest, $8,000 to his credit, and cancel his liabilities at said last named bank, to that amount, or as nearly so as might be. The plea then averred that the Detroit City Bank did not make such deposite, or cancel his liabilities at the Bank of Brest, to the amount of $8,000, or any other amount. The complainan tfiled a replication to the plea.

*A. Davidson*, for complainant.

*S. Barstow*, for defendants.

THE CHANCELLOR.    Is the plea proved?   When a replication is filed, the truth of the plea is the only question to be tried, and, if established, it is a bar to so much of the bill as it professes to cover.   *Fish v. Miller*, 5 *Paige R.* 26 ; *Bogardus* v. *Trinity Church*, 4 *Paige R.* 178 ; *Daws* v. *McMichael*, 6 *Paige R.* 139.

Brown is the only witness.   He is complainant's witness, but his testimony having been taken and read by complainant, defendant is entitled to the benefit of it to establish his plea, although he has examined no witness of his own for that purpose.   Brown was cashier of the Detroit City Bank, when the mortgages were given.   He says they were given to the bank, on condition he, as the agent of the bank, should deposite with the receiver of the Bank of Brest, $8,000 of the bills of that bank, to the credit of Britain, and cancel that amount of Britain's indebtedness at that bank.   He further says that, in July or August, 1839, he deposited the $8,000 with the attorney of the receiver, and took a receipt for it, "and received the assent of the Attorney General to the release of certain bonds and mortgages given by Britain to the Auditor General of the state, to secure the payment of the liabilities of the Bank of Brest."   These bonds and mortgages to the Auditor General, for the security of the creditors and bill-holders of the bank, were not Britain's indebtedness at the bank, or debts due from him to the bank.   When the arrangement for the bonds and mortgages was entered into, Britain told Brown he was owing the Bank of Brest about $6,000, and that he had been sued for it.   This, doubtless, was one of the liabilities that were to be cancelled; but neither it, nor any other debt due from Britain

to the Bank of Brest, has ever been paid by the Detroit City Bank. The $8,000 were not deposited with the receiver to the credit of Britain, or used in paying what Britain owed the bank. The receivers had nothing to do with the bonds and mortgages executed to the Auditor General. He could not discharge them, or enforce their collection. They did not belong to the bank; they composed no part of its assets. The creditors of the bank only could have recourse to them for the payment of their debts, after all other means for enforcing their payment had failed.

The plea being sustained by the evidence in the case, the bill must be dismissed with costs as to both of the defendants; and it is therefore unnecessary to decide the other questions discussed on the argument.